## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joshua Otey, being duly sworn, declare and state as follows:

### Introduction and Agent Background

1.  I make this affidavit in support of a criminal complaint charging that on or about November 27, 2024, in the District of Vermont, Daryn BARSALOU knowingly possessed a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, and knowing he had been convicted of such a crime, in violation of 18 U.S.C. § 922(g)(1).

2.  I have served as a Homeland Security Investigations (HSI) Special Agent (SA) since March 2020. As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am presently assigned to the HSI office in Burlington, Vermont. I have received extensive training provided by the Federal Law Enforcement Training Center and HSI in the investigation and enforcement of laws of the United States. I have participated in numerous criminal investigations regarding violations of federal narcotics, human trafficking, firearms, child exploitation, and financial laws. I have received extensive training and experience in crimes facilitated through the internet and electronic devices. I have received certification through The National White Collar Crime Center as a Certified Cyber Crime Investigator (3CI).

3.  The information contained in this affidavit is based on my training and experience, information provided to me by local, state, and federal law enforcement, as well as my own investigation, to include personal observations, documents, and other investigative materials which I have reviewed. Because this affidavit is being submitted for the limited

1

purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## Probable Cause

4.  On November 27, 2024, at approximately 0056 hours, the Bristol Police Department responded to a reported shooting at 40 Adirondack View, Apartment 5, Bristol, Vermont. Bristol Police Department (BPD) Officer Francis Smith arrived on scene and located a critically injured male in a bedroom of the residence. The male was the renter of Apartment 5. The male appeared to have a gunshot wound to the center of his forehead and was unresponsive. He was ultimately transported the University of Vermont Medical Center in Burlington where he later died. The cause and manner of death remain under investigation.

5.  In the course of the investigation, Officer Smith recovered a black Ruger model 22/45 .22 caliber pistol bearing serial number 225-14917 from dresser in the bedroom where the decedent had been shot. The pistol was loaded with a magazine containing (5) five rounds of ammunition. Two witnesses were present with the decedent in the bedroom when he was shot: the decedent's girlfriend, C.T., and BARSALOU. The witnesses told Officer Smith that the firearm from the dresser had been used in the shooting and that after the shooting, the firearm was moved to the dresser.

6.  Officer Smith spoke with BARSALOU outside of the residence. Officer Smith recorded the interview on his body worn camera and I have reviewed that footage. During the interview, BARSALOU told Officer Smith the following, among other things:

    a.  BARSALOU said the decedent shot himself in the bedroom. At the time of the incident, BARSALOU was in the bedroom with the decedent and C.T. BARSALOU said

2

it was routine for him and the decedent to unload their firearms and then "dry fire" them after unloading them. According to BARSALOU, he and the decedent would dry fire their guns at their hearts, but never their heads.

        b.      BARSALOU acknowledged he was a "felon" and he denied having any weapons on his person.

        7.      On November 29, 2024, at approximately 0720 hours, BPD Sergeant Andrew Graham spoke with BARSALOU outside the decedent's residence located at 40 Adirondack View in Bristol. Officer Graham recorded the interview on his body worn camera and I have reviewed that footage. During the interview, BARSALOU told Officer Graham the following, among other things:

        a.      BARSALOU said the firearm used in the shooting had been on a table in the living room and BARSALOU had watched the decedent load the firearm earlier in the day. BARSALOU therefore knew the gun was loaded. As BARSALOU was getting ready to leave the residence, the decedent called him (BARSALOU) into the bedroom. On his way into the bedroom, BARSALOU "grabbed the gun" and brought it to the decedent. As BARSALOU handed the gun to the decedent, he told the decedent that it was loaded.

        b.      After BARSALOU handed the decedent the firearm, the decedent put the gun to his forehead and pulled the trigger.

        c.      BARSALOU said that he and others routinely unloaded their firearms and then "dry fired" the weapons at themselves. BARSALOU said "we've done this for years."

        d.      BARSALOU said he was an addict but was not under the influence at the time of the incident. BARSALOU acknowledged the firearm would have his fingerprints on it because he brought it into the bedroom and handed it to the decedent.

8.     After the interview with BARSALOU, Sgt. Graham left the residence but later returned that same day to obtain long rifles from the residence. When Sgt. Graham arrived at the residence, he was met at the door by BARSALOU and C.T. The interaction was audio and video recorded on the body camera of Sgt. Graham. I have reviewed the camera footage of this interaction and noted that during this interaction, C.T. and BARSALOU provided Sgt. Graham with two long rifles, apparently belonging to the decedent. BARSALOU acknowledged he was prohibited from possessing firearms and said: "I don't give a fuck about my fingerprints being on them, but like I fucking want them out of here."

9.     On December 1, 2024, HSI received information from a Source of Information (SOI) whose name is known to law enforcement. The SOI contacted HSI because the SOI said s/he had received a message over Facebook from BARSALOU about the shooting. I met with the SOI who showed me messages received on their Facebook from the Facebook account: "Daryn Traver (Duke The Dawg)." The SOI said this Facebook account is used by BARSALOU.

10.    The Facebook message from BARSALOU was received by the SOI the day after the shooting, on November 28, 2024, at 1:07 P.M. In the message, BARSALOU said, among other things, that the decedent left the gun in the living room and BARSALOU brought it into the bedroom and handed it to him.

11.    I went to Facebook and reviewed the publicly available information for the account "Daryn Traver (Duke The Dawg)." I believe the account belongs to, and/or is used by, Daryn BARSALOU for a number of reasons. First, prior to my employment with HSI, I was employed by Bristol PD and through that work, I became familiar with Daryn BARSALOU. The "Daryn Traver (Duke The Dawg)" account contains photographs of Daryn BARSALOU, and information (such as nicknames, school, and residence information) which are consistent

4

with Daryn BARSALOU based on my knowledge of him. Second, the SOI indicated that the Facebook account was used by BARSALOU.

12. I have reviewed the criminal history for Daryn BARSALOU and noted that he has criminal convictions in Vermont and New York dating back to 2014 and 2015 respectively. Specifically, I am aware that on February 27, 2017, Daryn BARSALOU sustained a felony conviction in Vermont Superior Court for Obstructing Justice and was sentenced to incarceration for 1 to 5 years.

13. On December 2, 2024, I spoke with ATF SA Eric Brimo, an ATF expert in the interstate nexus of firearms. I provided SA Brimo with the make, model and serial number of the Ruger firearm involved in the shooting. SA Brimo advised that the Ruger was not manufactured in the State of Vermont and therefore its presence in Vermont means that the firearm previously traveled in interstate and/or foreign commerce.

14. Based on the foregoing, I believe that there is probable cause to believe that on November 27, 2024, in the District of Vermont, Daryn BARSALOU possessed a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

Attested to by reliable electronic means.

/s/ Joshua Otey
SPECIAL AGENT JOSHUA OTEY
Homeland Security Investigations

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 on December 3, 2024.

HONORABLE KEVIN J. DOYLE
United States Magistrate Judge